It was an ADA claim and the District Court erred in five ways, I would say, in coming to its decision. First, it did not appropriately apply the standard of review that's applicable to motions to dismiss. Second, if a burden of proof type standard was going to be applied in this case, it should have been a direct evidence type analysis, not a McDonnell-Douglas analysis. Third, to the extent the District Court applied a McDonnell-Douglas analysis, it didn't apply it correctly. Next, fourth, it rested its opinion pretty much entirely on Mr. Cook's failure to show up for an interview, which is wrong for a variety of reasons. And finally, the plaintiff should have been allowed to amend his complaint because it was not futile. Now going to the issue of the standard of review on a motion to dismiss, of course, all the facts that are pled have to be believed, favorable inferences have to be drawn from those facts, the complaint is to be viewed as a whole, not parsed and broken up into piece by piece and paragraph by paragraph, and you say, well, that paragraph is implausible when you don't view it in light of the rest of the complaint. Let me ask you this, the defendant filed their initial motion to dismiss primarily based upon a failure, alleged failure, to plead a disability. Looking at your complaint, what do you think is, what did you plead in your complaint that set out what was your client's disability and how it affected his employment? Well, it depends on what part you're talking about. We moved to amend and the motion to amend was primarily directed at the... Well, let's assume the motion to amend was allowed because they mainly, the District Court denied it on futility grounds, not in merits, right? Right. Let's assume the motion to amend was granted. If it had been granted, what we would have seen is that Mr. Cook in the 1990s had a serious car accident that left him comatose for a period of several weeks. And this is all in the complaint? It is in the amended complaint. Do you remember what paragraphs? It is in the amended complaint. It would be at paragraphs, it would be at paragraphs, hold on just a moment, what would be appendix page 50-59? Five and six. Five and six, yes sir. And basically what you would have seen in that situation is that he had impairments of his ability to work, to think, to concentrate, to interact with others, and to stand and lift. And, you know, for instance, basically Mr. Cook is extremely difficult to understand because his speech has been impaired. You can't understand the man on the phone. And his ability to communicate by reading and writing is also severely impaired. It's very hard to understand what he's writing and he reads very slowly. He has difficulty standing for long periods of time. He's in pretty much constant pain from his legs and there's just a variety of other things that precludes him from a broad area of work activities. Basically any type of office, administrative, clerical type work, he's not going to be able to do, period. What about the qualified individual requirement of the disability discrimination claim? From what I could tell from either the complaint or the amended complaint, I didn't see anything about what position he sought, how he could have done that position with his physical or mental limitations. And so, isn't that a problem? No, I don't think it is. And the reason I don't think it is, is first, we have a case involving direct evidence here and pursuant to TWA versus Thurston, the qualification element is part of the McDonnell Douglas analysis. And TWA versus Thurston basically indicates that where you have direct evidence, you do not apply McDonnell Douglas analysis. And since we have the practice of making pre-offer medical inquiries, since we have the 333 policy, which three different HR people have basically been indicated in the complaint to have said that where you have a medical issue, you can't be hired, period. But that can't be the rule because, I mean, suppose he applied for CEO, right? He wants to be CEO of the company. And it turns out that, I mean, that he's not qualified for that position. You can't bring a disability discrimination claim without evidence of what he's qualified for. Well, ultimately, I might have to prove that he's qualified. That would be an issue down the line. But when you're talking about a discriminatory direct evidence of discrimination, no, I don't have to prove that. Well, let me ask you this. Is there anything in the complaint that says what, I mean, it's more of a factual question at this point, that says what he applied for or how he could do that job? Now, that was the second part I wanted to get to. Sure, sorry. That's okay. It's okay. Basically, it does not say what he applied for. But what it does say is that everybody that applied for the job was given an interview. And in far less than the two weeks, it took Mr. Cook to get an interview. So first of all, if you're looking at the issue of qualification by who gets an interview, everybody got an interview. Second of all, this 333 analysis, it doesn't, or policy, it doesn't come from nowhere. You can't be marked 333 unless you've been employed there before. Basically, Mr. Cook was known to have these health issues because he had worked there before. That's how they knew to put 333 in his employee database. Is that in the complaint? Yeah. It's not specifically in the complaint that he was employed there before. But what it does, I think that's a permissible inference. You're required to draw favorable inferences. And that's what can be inferred by the 333, is that they wouldn't have had knowledge about the health issues unless he had worked there before. You've also said in your argument that part of the discrimination is requiring medical background information from an applicant. Is that in the complaint as well? Yes, it is. Can you help me? Basically, what they were doing was they were making pre-offer inquiries about whether or not an employee needed reasonable accommodation to do their job. So the defendants made pre-offer inquiries about whether or not applicants would need reasonable accommodations to do the job. But there's nothing about what interacted with your client, though, right? Well, it indicates that he had 333 in his employee database. And so that was why he was not initially slated to be interviewed. What do we do with the fact that he did get an interview, an offer, an offer to come in for an interview? I'll go to that. Paragraph 17 is where it talks about pre-offer inquiry, by the way. It's appendix pages 55 and 56. Are you on the amended complaint? Yeah, but it's also in the... But anyway, going to this issue of the fact that he didn't get an interview, one thing I would say there is that there's a lot of things wrong with the court's analysis below there. First of all, if it were applying a direct evidence analysis, that would be something that would properly be put toward their affirmative defense once we deduce the direct evidence of intent, which would be the 333 policy and Balch's statements to Mandy James. So they would have had the burden of proving that they would not have hired him because he failed to show up for that interview. And that's not a proper analysis to be applying at the motion to dismiss stage. If you're looking at it from a McDonnell-Douglas analysis, that is basically the court proffering the legitimate nondiscriminatory reason, which is prohibited. The court can't offer it. The lawyers can't offer it. It can't be taken from the answer or the pleadings. It has to be offered through admissible evidence. And once again, that is an evidentiary issue that you only get to when you're proving your case. So you're focused not on the failure to show up for the interview, but the failure to reschedule. That must be where you're focusing. Yes, ma'am. And what you have to put in mind is that that statement about him not showing up for the interview and the court said, well, you didn't identify anybody specific. That's what I'm talking about when I say taking one paragraph out of context. That was only a partial draw from a paragraph that indicated that Mandy James, the HR manager, had gone to Glenn Balch and said, hey, why don't we reschedule this guy? And that Glenn Balch absolutely refused to do it. And remember, he had told her, you can't hire this guy under any circumstances, no matter what happens in that interview. He refused to do it. And the normal practice had been that if you don't show up for an interview, I mean, this is a chicken plant. People don't show up for interviews if they don't, you know, they need people. The normal practice had been that if you don't show up for an interview and you ask to reschedule, you get to reschedule. And you can look at that in two ways. One is you can look at it as a failure to follow normal policy and procedure, which is evidence of pretext, which would go to prove my McDonald-Douglas case, which would go to establish that inference of intent in the fourth element of a McDonald-Douglas case, which my client shouldn't even have to prove. And it, you know, it goes to this issue of when you're arguing a motion to dismiss, you don't have to provide extremely specific, detailed facts. We didn't sit there and say similarly situated people were treated differently. We weren't using legal jargon. They're on fair notice of the kind of comparators we're talking about, which is people who did not show up for an interview, who no showed, no called on the interview, and then requested to reschedule their interview and were allowed to do so. I'll reserve the rest of my time. Thank you. Thank you. Ms. Bowler? May it please the court. My name is Christy Bowler, and this is my co-counsel, Casey Tucker, and we represent the Apple East, Georgia's Inc. in the present matter. I think the best place for me to start today, your honors, is to clarify a little bit about a couple things that Mr. Gillum addressed. First of all is on this 333 matter. I think it's best to hit that head on and figure out where we're at with that. I think as the court has seemed to recognize, that part of the complaint is fairly confusing. It's as if we're jumping into an entirely different complaint right there. As this court has said in Blomker when they were citing Gregory V. Dillard's, it's not the duty of this court to infer or divine the plaintiff's intent. That's the plaintiff's job in their complaint, is to draft a complaint in a manner that's plausible on its face, which is something that Mr. Cooke has failed to do here. When we look at Mr. Cooke's complaint as a whole, it appears that 333 relates to individuals who have prior interactions with Georges. That's actually what Mr. Gillum stood up here on the podium this morning and told you all. However, there's a couple problems with his complaint. There are no allegations in the complaint suggesting that Mr. Cooke ever had any prior interactions with Georges. No, that's not true. It says that the only way they knew about it is because he was employed there previously. I don't believe, Your Honor, that that allegation is actually in Mr. Cooke's complaint. I believe Mr. Gillum stood up here and said that, but I don't believe there's any allegation in the complaint that says that Mr. Cooke ever interviewed or ever worked for my client previously. Well, let me see. I just saw it here a second ago. Go ahead. I'll find it. But I'm quite sure it says here that the only way they knew about it is because he'd worked there before. Go ahead. Okay. Mr. Cooke never alleges that he disclosed any medical information, nor that Georges relied on such medical information. Therefore, these arguments on 333 seem to be misplaced. There is an inference, at least, you could make about the medical, that the only way they could have made that decision is if they had asked for the medical information as part of the application. So couldn't we make that inference, that he had applied, that included some medical information that then the company used to slot him into the 333 category? Your Honor, I think you could make that inference. However, as I stated, it's the plaintiff's job to state a claim that's plausible on its face. It's not the court's job to go through and actually create that or to make those inferences for Mr. Cooke. Well, we do have to make all reasonable inferences in his favor, though, correct? You do, and you have to take all factual allegations as true. And I believe if we're looking at either the original complaint or the amended complaint, they still fail to state a plausible claim on their face, which is a requirement by Iqbal, this Court's well aware. Well, the paragraph I'm referring to is in the amended complaint, paragraph 17. The complaint says, the only way that Balch, I assume he's a hiring, or she's a hiring person, if I'm pronouncing that correctly, or any other hiring official would have known this is that they had set up a record-keeping system to search the records of prior employees for medical issues. So, isn't that a fair inference, that that's how they found out about his disabilities, because they searched the medical records of prior employees? I think... He says that's how the 333 got on his file. I think to read that requires a lot of reading in on the Court's part. I think it requires the Court to infer a lot of facts that Mr. Cooke failed to include in his complaint. Well, why does he have to include dates, time, places of prior employment in a complaint under notice pleading? He says, I was a prior employee, they knew about my disability, they put 333 on my file that says under your policy, 333 means you're not eligible to be rehired because you're disabled. Isn't that enough to state a claim? Your Honor, I think if Mr. Cooke had gone to those details, we would be looking at a different complaint, we would be looking at a different situation. I think instead what we have is Mr. Cooke requiring the Court to make inferences, requiring the Court to read in facts that aren't there to read between the lines. What facts do we have to read in? I think that we do not have a place in this complaint. I realize you're saying by saying this paragraph 17, it suggests that he had worked for my client previously, but I don't think we have a point in this complaint where Mr. Cooke says I did work for the complaint, worked for Georgia's previously, or that I did disclose medical information to them previously. I think that this Court is being required to read between the lines and say, well, because Mr. Cooke is alleging that he had 333 in his file, however, there's no indication that Mr. Cooke was ever aware of that. Paragraph 10 says that he had previously worked there because they only put 333 on files of people who had worked there. I'm sorry, Your Honor, are you in paragraph 10 of the amended complaint or the original complaint? Asked one of the orientation trainers what it meant, referring to 333, as they had worked to the plan, told him it meant that a person had a medical condition and was not eligible for rehire. So you don't rehire somebody who hasn't worked there. I mean, how can you not infer from this complaint, in two different spots, they referred to rehiring and the fact they'd worked there before, and that's how they knew about the disability and put the 333 on them. I don't see how you can say you can't infer that from this complaint. Your Honor, I'll defer to you on that. I think that, like I said, I think as a whole, I think the complaint does not state a plausible claim on its face for discrimination or retaliation. But I see where the inferences you are drawing to assume that Mr. Cooke was a prior employee of my clients. Counsel, related to that question, I want to get at qualified individual, because I think you have to plead a prima facie case, and yes, you could potentially skip over McDonnell Douglas with direct evidence of discrimination, but I don't think you can skip over the rest. What's your client's argument on qualified individual, if any? Well, Your Honor, I think that we would say that it's nearly impossible to determine whether or not Mr. Cooke was qualified. As you pointed out earlier, we don't know what position he applied for. We don't even know what specific task he might be required to perform. If you read through the amended complaint, Mr. Cooke himself actually provides a whole laundry list of items that he cannot perform, one being most factory-type jobs. I think based on the facts that are in the complaint, it's going to be nearly impossible to determine whether or not Mr. Cooke could even create a plausible claim that he could be qualified for whatever this unnamed position is. Does that change based on Judge Malloy's questioning, which is if he worked for Georges, Inc. in the past, then can't we make an inference that he could work for Georges, Inc. in the future? Not necessarily, Your Honor. I think that the issue we have is clearly Mr. Cooke is telling us that at some point in time he had this major accident and injury that's causing all of these issues with him now. We have no indication as to when he worked for my client previously, so if he had worked for my client previously pre-this accident, then he had this accident, it may mean that now because he has all of these additional disabilities that he cannot perform, these activities he cannot perform in a work setting, that it may be such that now he is no longer able to be qualified for that position. Is there anything to the interview, the fact that the combination that he was interviewed for the position which showed that at least plausibly Georges, Inc. thought he could qualify for the position, coupled with the fact that he worked there in the past, does that get him past that prong? So Your Honor, he was offered the opportunity to interview, however he elected on his own accord to not attend the interview. So I don't know that we could read anything into the actual interview since he did not attend. I think something that we haven't spent a lot of time on today is the retaliation claim and I feel like this is some rather low hanging fruit that the court can easily agree and affirm with the district court on. As you all are well aware on a retaliation claim, the plaintiff is going to need to prove that they engaged in some statutorily protected activity. And Mr. Cook's allegations on retaliation never suggest that he engaged in any statutorily protected activity. Rather in the complaint, Mr. Cook states, and I'll quote, sharing medical information is a protected activity. And as the court will recognize, this is a legal conclusion, not any factual allegation. There's no facts suggesting how or to whom Mr. Cook shared medical information or that he even shared medical information to qualify for this statutorily protected activity. And so for that reason, I would say that the retaliation claim can very easily be resolved of and affirmed on appeal from the district court's decision. One other argument that Mr. Cook raises in his briefing that I think it would be helpful for the court to hear is that Mr. Cook has no need to even engage in the application process because of this alleged discriminatory practice or policy by my client. However, the cases that Mr. Cook relies on there are International Brotherhood of Teamsters versus U.S. and Frank versus Bowman. And both of those cases are actually factually similar to each other in that it was discovered that the employer had a known pattern or practice of discriminating against a protected class of individuals. And the individuals that were involved in those cases were current employees. They were either applying for an internal promotion or transfer but were denied because of this policy or they elected not to apply because they were aware of it. They forwent that opportunity. But all of them were current employees who were well aware of this policy. In this present case, there's no factual evidence that Mr. Cook himself was actually aware of any pattern or practice of discrimination by Georges or that Mr. Cook elected not to attend his interview because of this alleged policy or practice by my client. What about the assertion that while he didn't show up for the interview, others were given the opportunity to reschedule and he was not? Does that take his case out of the norm? In other words, that there's something over and above his failure to show up that is discriminatory? I don't think so, Your Honor. I think that in this situation, we don't have any indication in the complaint as to who those comparators were, whether they were applying for similar jobs as Mr. Cook or whether they had notified him in advance that they weren't going to show up for the interview. We don't know how those individuals compare to Mr. Cook. We actually don't even know the facts really surrounding Mr. Cook not showing up, other than we're told that he did not appear. He did appear the next day, though, and asked to have it rescheduled, right? According to the facts in the complaint, yes, Your Honor. And I would just point out that the obvious alternative explanation here for going ahead and affirming the denial on this case is that Mr. Cook provided that obvious alternative explanation that he didn't show up for the interview, which Judge Brooks rightfully noted and rightfully relied on in his opinion. Mr. Cook's complaint is riddled with legal conclusions and is factually flawed in that it does not plead sufficient facts to state a plausible claim for discrimination or retaliation. This is a precise example of the type of threadbare and conclusory pleadings that it's right for dismissal under Rule 12b-6. Therefore, this court should affirm the district court's dismissal of Cook's complaint. If Mr. Cook had shown up for his interview and didn't get the job, would there be enough in this complaint on the 333 policy to proceed? Is that the one thing that is in your mind preventing this case from moving forward? Your Honor, I don't know that we could stand here today and say whether or not that would be sufficient to let this case go forward. I think we would have to know what happened in the interview. In the interview, did Mr. Cook disclose that all of a sudden he couldn't actually perform any of the tasks that were required of the job he was interviewing for? If so, 333 has nothing to do with that. If he were to show up and it was a mere perfunctory, what's your name, have a nice day, get out of my office, then we're looking at a much different situation, but we didn't even get to get there with Mr. Cook. Mr. Cook, on his own accord, elected to not show up. He chose to cut off this application and hiring process, not my client. Thank you, Your Honors. Thank you. Just to go to this issue of qualification, you can infer qualification here. One, my client worked there before. Two, the only reason offered for not bringing him in for an interview was this 333 policy, not that he had previously engaged in some sort of misconduct or showed an inability to work out there. Three, the HR manager, who's a gatekeeper typically for who comes in and who doesn't, wanted to interview him. Presumably, she felt, I think the inference there is she felt he met the minimum qualifications of the job. Next. Does that conflict? Maybe I'm wrong about this, but you mentioned in your previous part of the argument that everybody got an interview. Yes, that's true. If that's true, then maybe, I mean, certain businesses decide, I'm going to bring everybody in that applies, and then I'm going to assess their qualifications after the interview. It's kind of a silly way to do things, but doesn't that conflict with the point you just made? It could when you get to the fact-finding stage at trial, deposition, motions, but here we're on a motion to dismiss, and I'm entitled to all the favorable inferences, and I'm allowed to plead alternate theories, so I think I get over the bar there. Another thing I would say is that even if this guy were on Social Security Disability, you can still apply for a job, do a trial work period, and under Cleveland, if you can establish that you can do the job with reasonable accommodation, you can still be eligible to are considered unable to do most jobs you have the education and training to do. So I think we've chinned the bar on qualification. In addition, I just don't think it's required in a case involving direct evidence. Furthermore, we should have been allowed to amend. We were facing a motion to dismiss that basically dealt with he didn't plead a disability adequately, and that's what we moved to amend on. The sum total of the argument in their motion to dismiss was about eight lines with one case cited on the issue of intent, and we didn't really have much reason to think that this was going to go out on that issue. My client didn't cut off this. Glenn Balch cut it off when he refused to let my client reschedule even though the normal practice was that people got to do that. The complaint on this 333 business, it is not confusing. Paragraph 7 says that there is a 333 code that indicates that if you have medical issues, you don't get hired. Paragraphs 9 through 11 deal with its discovery by HR Specialist T, who transferred the issue up the chain of command to Mandy James. Counsel, before you finish, I just want to ask you about the retaliation. Opposing counsel talked about statutorily protected activity. I haven't, I had the same concern. We're dismissing, we're abandoning the retaliation. Oh, you are? Okay. I might have missed that. I apologize. Yeah. Should have said that in the brief. And then, you know, it deals with, in paragraphs 12 through 16, it deals with Balch's, yeah, this is okay. This 333 business is okay, and his anger when Mandy James tried to change it, and thank you for your time. Is there a parallel case on this same set of facts with another plaintiff, pending? Um, oh yes, I see what you're asking. Yes, Mandy James had filed, had filed a suit herself, and we represent her also, so that was a separate lawsuit. We took a non-suit on that and are refiling it in state court. Thank you. Thank you. Thank you, counsel. We appreciate your arguments and your briefing, and we'll take the matter under consideration.